Filed 8/11/26  Cal. Civil Rights Dept. v. Space Exploration Technologies CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CALIFORNIA CIVIL RIGHTS DEPARTMENT,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SPACE EXPLORATION TECHNOLOGIES CORP.,<br><br>Defendant and Appellant. | B346853<br><br>Los Angeles County Super. Ct. No. 25STCP01327 |

APPEAL from an order of the Superior Court of Los Angeles County, Maureen Duffy-Lewis, Judge.  Affirmed.

Morgan, Lewis & Bockius, Jennifer B. Zargarof, Joseph Bias, Thomas M. Peterson; Horvitz & Levy and Jeremy B. Rosen for Defendant and Appellant.

Rob Bonta, Attorney General, Michael L. Newman, Assistant Attorney General, William H. Downer, Lucia J. Choi and Jennifer M. Soliman, Deputy Attorneys General, for Plaintiff and Respondent.

Space Exploration Technologies Corp. (SpaceX) appeals an order compelling it to comply with the California Civil Rights Department's (CRD) investigatory subpoena. CRD issued the subpoena after receiving an administrative complaint from a former SpaceX employee alleging violations of California's Fair Employment and Housing Act (FEHA, Gov. Code, § 12900 et. seq.).[1] SpaceX argues the federal constitution, the presumption against extraterritorial application of laws, and FEHA precluded CRD from investigating the complaint because it alleges conduct outside FEHA's territorial reach. We conclude SpaceX has not met its burden to show error on any of these grounds. Accordingly, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The administrative complaint*

In April 2024, a former SpaceX employee (the Employee) filed a complaint with CRD alleging the company discriminated and retaliated against her in violation of FEHA. The Employee listed a California address for SpaceX. She alleged SpaceX paid her less than a male employee hired around the same time and passed her over for a promotion in favor of a less experienced male employee. The Employee asserted SpaceX eventually increased her and another female employee's salary, without giving any reason for doing so. The Employee also alleged SpaceX terminated her in retaliation for her participation in drafting and circulating an open letter criticizing the company and its CEO for creating a hostile work environment and engaging in sexual harassment and gender discrimination.

---

[1] Undesignated statutory references are to the Government Code.

2

## 2. *The investigation*

After receiving the complaint, CRD served on SpaceX interrogatories and a subpoena duces tecum seeking information related to the Employee and her allegations. SpaceX objected to all the requests on the ground that CRD lacked jurisdiction over the claims because the Employee was a resident of Washington and FEHA does not apply outside California. Notwithstanding that objection, SpaceX agreed to produce the Employee's resume and application, as well as records of her badge swipes.

In response to SpaceX's objection, CRD agreed to focus its investigation on the jurisdictional questions before deciding whether to investigate the merits of the Employee's claims. CRD identified 14 discovery requests seeking information related to the location where the conduct giving rise to the claims took place, and it asked SpaceX to respond to those specific requests.

SpaceX eventually provided supplemental responses. Based on those responses, CRD determined it had jurisdiction over the retaliation claim. However, CRD concluded SpaceX had not provided enough information for it to determine whether it had jurisdiction over the discrimination claims. CRD asked SpaceX to respond to discovery requests related to the merits of the retaliation claim and provide more information related to its jurisdiction over the discrimination claims. SpaceX apparently declined to do so.

## 3. *The petition*

In April 2025, CRD filed a petition in the superior court seeking an order compelling SpaceX to comply with its subpoena. CRD asked the court specifically to compel SpaceX to produce documents that would help it to evaluate the merits of the

Employee's retaliation claim and the jurisdictional issue concerning her discrimination claims.

CRD acknowledged SpaceX hired the Employee to work in its Redmond, Washington office. However, CRD stated the law requires it to investigate the allegations and determine whether the conduct has a substantial connection to California. CRD argued FEHA applies to non-California residents if the discriminatory conduct occurred in California. Therefore, it needed to investigate whether SpaceX's alleged discriminatory conduct occurred or was ratified in California, where SpaceX was headquartered at the time.

### 4. *SpaceX's opposition*

SpaceX opposed the petition. It argued, because the employee lived and worked in Washington, CRD's assertion of jurisdiction violates the United States Constitution and California law. According to SpaceX, Washington-based managers determined the Employee's compensation, position, and promotion opportunities. SpaceX argued its company-wide policies were "entirely irrelevant" to CRD's jurisdiction, and the Employee's employment was governed solely by Washington law. SpaceX asserted that the mere possibility the discriminatory conduct may have occurred or been ratified in California was too speculative.

In support of its opposition, SpaceX submitted a declaration from its Director of Human Resources for the Redmond, Washington office, Theresa Roncari. Roncari stated the Employee was hired to work in Washington, assigned to work in Washington, and lived in Washington during the relevant times.

4

Roncari asserted Redmond-based managers—who have discretion and are the ultimate decisionmakers for compensation and promotion—were "primarily responsible" for determining the employee's compensation, position, and promotion opportunities. Roncai said SpaceX's Senior Director of Human Resources, Lindsay Chapman, flew to Washington and interviewed the employee as part of an investigation into the open letter. Chapman made the decision to terminate the employee while in Washington. Two days after the interview, Chapman called the employee at her residence in Washington to notify her of the termination. Roncari asserted SpaceX terminated the Employee for violating its policy against leaking confidential company information and dishonesty during an internal investigation.

**5.    *CRD's reply***

In its reply, CRD asked the court to take judicial notice of a complaint the Employee and seven other former SpaceX employees filed in superior court. The complaint listed the Employee's connections to California, including that she "reported up to" a SpaceX vice president located in California, her "direct manager" since September 2021 was located in California, her pay statements were issued from California and listed a California facility as her employer, and her new-hire paperwork contained documents related to California employment law.

**6.    *The order and appeal***

The court held a hearing on May 23, 2025 and granted the petition.[2] The court did not state its reasons for doing so. SpaceX timely appealed.

---

[2]    After granting the petition, the court set a hearing to consider the scope of CRD's requests. The court ordered the

5

## DISCUSSION

SpaceX challenges the superior court's order compelling it to comply with CRD's subpoena. SpaceX argues the court should have denied the petition because CRD "cannot plausibly establish jurisdiction to issue the subpoena." As we understand its arguments, SpaceX contends the federal constitution, the presumption against extraterritorial application of laws, and FEHA precluded CRD from investigating the complaint because it alleges conduct outside FEHA's territorial reach.

Before turning to the merits of SpaceX's arguments, we must discuss the scope of our review. CRD's petition sought an order compelling SpaceX to disclose information on two issues: (1) CRD's jurisdiction to investigate the Employee's discrimination allegations; and (2) the merits of the Employee's retaliation allegations. Whether CRD has jurisdiction and whether the Employee's allegations have merit are distinct issues, and it is conceivable that CRD would have authority to request information related to one issue but not the other. However, SpaceX does not meaningfully distinguish between them. Instead, as we understand its arguments, SpaceX contends CRD was categorically prohibited from seeking any information related to the complaint. Therefore, we limit our consideration to that issue, without distinguishing between CRD's requests related to jurisdiction and those related to the merits of the Employee's allegations.

---

parties to meet and confer on that issue before the next hearing. The record does not include documents related to that issue.

6

1. ***Relevant law***

FEHA prohibits discrimination in employment on the basis of certain protected characteristics, including sex and gender.  (§ 12940.)  As a matter of fundamental public policy, FEHA declares the need to "protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination" on the specified grounds.  (§ 12920; see *Bailey v. San Francisco Dist. Attorney's Office* (2024) 16 Cal.5th 611, 626.)  FEHA's overriding purpose is "to provide effective remedies that will eliminate these discriminatory practices." (§ 12920.)

As relevant to this case, it is an "unlawful employment practice" under FEHA for an employer to "discriminate against [a] person in compensation or in terms, conditions, or privileges of employment" because of sex or gender.  (§ 12940, subd. (a).)  It also is an unlawful employment practice for an employer "to discharge, expel, or otherwise discriminate against any person" for opposing practices that violate FEHA.  (*Id.*, subd. (h).)

FEHA establishes a "procedure for the prevention and elimination of" unlawful employment practices.  (§ 12960, subd. (a).)  Under section 12960, "[a]ny person claiming to be aggrieved by an alleged unlawful practice may file . . . a verified [written] complaint" with the name and address of the employer and setting forth the "particulars thereof" and "other information as may be required by [CRD]."  (*Id.*, subd. (c).)

The Legislature created CRD to "represent[ ] the interests of the state and effectuate[ ] the declared public policy of the state to protect and safeguard the rights and opportunities of all persons from unlawful discrimination and other violations of" FEHA.  (§ 12930, subd. (o).)  Section 12930 grants CRD the

7

"functions, duties, and powers" to "receive, investigate, conciliate, mediate, and prosecute complaints alleging practices made unlawful pursuant to . . . Section 12940." (*Id*., subd. (f)(1).)

"In connection with any matter under investigation or in question . . . pursuant to a complaint filed under Section 12960," CRD may issue subpoenas and written interrogatories, take depositions, and request the production of documents. (§ 12930, subd. (g); see § 12963.1 [describing the procedure for issuing subpoenas].) CRD may petition the superior courts to compel compliance with its investigatory requests. (§ 12930, subd. (g)(5); see § 12963.5.)

**2.** ***SpaceX has not shown enforcement of the subpoena violates the federal constitution***

SpaceX first argues enforcement of CRD's subpoena violates the federal constitution.

SpaceX's analysis of the federal constitutional issues is so cursory that it warrants little discussion. The relevant section of SpaceX's opening brief—which spans roughly two pages—consists of four paragraphs summarizing the law followed by a one-sentence conclusion. SpaceX cites cases concerning at least four constitutional provisions: the commerce clause (*National Pork Producers Council v. Ross* (2023) 598 U.S. 356; *Edgar v. MITE Corp.* (1982) 457 U.S. 624; *Healy v. Beer Institute* (1989) 491 U.S. 324), the due process clause of the Fourteenth Amendment (*BMW of North America, Inc. v. Gore* (1996) 517 U.S. 559), the full faith and credit clause (*Huntington v. Attrill* (1892) 146 U.S. 657), and the supremacy clause (*Edgar*). SpaceX does not discuss those provisions in any detail. In fact, it is not even clear which provisions SpaceX argues enforcement of CRD's subpoena violates. The only constitutional provision SpaceX

8

mentions by name in its opening brief is the commerce clause. However, SpaceX fails meaningfully to explain how enforcement of an investigatory subpoena violates the commerce clause—or any other constitutional provision for that matter—particularly when the subpoena is directed at a company with a significant presence in California, issued in response to an administrative complaint filed in California and alleging violations of California law, that requests information to determine if the company violated California law.[3]

"The most fundamental rule of appellate review is that the judgment or order challenged on appeal is presumed to be correct, and it is the appellant's burden to affirmatively demonstrate error." (*Argueta v. Worldwide Flight Services, Inc.* (2023) 97 Cal.App.5th 822, 833.) To meet that burden, the appellant must provide "cogent argument[s] supported by legal analysis." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287 (*Adam*); see *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 ["the appellant bears the duty of spelling out in his brief exactly how the error caused a miscarriage of justice"].) We do not serve as backup appellate counsel, and we are not required to make arguments for the parties. (See

---

[3] At oral argument, SpaceX argued its briefs are "clear" it makes a "dormant commerce clause argument." We disagree. SpaceX's briefs do not even mention the applicable test to determine whether a California statute violates the commerce clause, let alone meaningfully apply that test. (See *Sullivan v. Oracle Corp.* (2011) 51 Cal.4th 1191, 1201 (*Sullivan*) [noting "[c]hallenges to state statutes under the commerce clause are typically addressed under the test set out in *Pike v. Bruce Church, Inc.* (1970) 397 U.S. 137, 142"].)

9

*Martine v. Heavenly Valley Limited Partnership* (2018) 27
Cal.App.5th 715, 728.)  Instead, "we may disregard conclusory
arguments that are not supported by pertinent legal authority
or fail to disclose the reasoning by which the appellant reached
the conclusions [it] wants us to adopt."  (*Adam*, at p. 287; see
*Thurston v. Midvale Corp.* (2019) 39 Cal.App.5th 634, 651
[appellant forfeited claim "by failing to support it with
appropriate legal citations or argument"].)  Here, SpaceX's
cursory treatment of the constitutional issues in its opening
brief is far from sufficient to meet its burden to show error.
Accordingly, we consider the arguments forfeited and decline
to consider them.

For the first time in its reply brief, SpaceX argues CRD's
subpoena constituted a "fishing expedition" that violates the
constitutional prohibition on unreasonable searches and seizures.
SpaceX supports this argument with significantly more analysis
than its other constitutional arguments.  Nevertheless, SpaceX
forfeited the issue by failing to raise it in its opening brief.  (See
*Christoff v. Union Pacific Railroad Co.* (2005) 134 Cal.App.4th
118, 125 ["an appellant's failure to discuss an issue in its opening
brief forfeits the issue on appeal"].)  Accordingly, we decline to
consider it.

3.    ***SpaceX has not shown enforcement of the subpoena
      violates the presumption against extraterritorial
      application of laws***

SpaceX next argues enforcement of CRD's subpoena
violates the presumption against extraterritorial application
of laws.  (See *North Alaska Salmon Co. v. Pillsbury* (1916)
174 Cal. 1.)

10

The presumption is a rule of statutory construction under which courts "ordinarily will not give extraterritorial effect to legislative enactments absent an affirmative indication that such was the Legislature's intent." (*Ward v. United Airlines, Inc.* (2020) 9 Cal.5th 732, 749 (*Ward*).) The rule "reflects an assumption that a legislature generally legislates with domestic concerns in mind" and also "serves the incidental purpose of avoiding unintended conflicts with other sovereigns." (*Id*. at pp. 749–750.)

In *Ward*, the California Supreme Court discussed the limited usefulness of the presumption against extraterritoriality, particularly in cases involving interstate employment. The court explained application of the presumption is determinative only in cases where any extraterritorial effect is sufficient to bar application of the law. (*Ward, supra*, 9 Cal.5th at pp. 749–750.) In all other cases, "it is not sufficient to ask whether the relevant law was intended to operate extraterritorially or instead only intraterritorially, because many employment relationships and transactions will have elements of both. The better question is what kinds of California connections will suffice to trigger the relevant provisions of California law." (*Id*. at p. 752.) To answer that question, courts may consider the provision's aims and role within the greater statutory scheme, keeping in mind the "central insight" that the "Legislature ordinarily does not intend for its enactments to create conflict with other sovereigns." (*Id*. at pp. 752, 755.)

Here, SpaceX does not contend—nor could it—that any extraterritorial effect is sufficient to bar application of FEHA. Therefore, under *Ward*, we must ask what sort of California

11

connections are sufficient to trigger the relevant provisions of California law.  (See *Ward, supra*, 9 Cal.5th at p. 752.)

To the extent SpaceX argues enforcement of CRD's investigatory subpoena violates the presumption, we are concerned only with the connections required to trigger provisions granting CRD authority to issue and enforce investigatory subpoenas.  CRD's investigatory authority is set out primarily in sections 12930, 12963.1, and 12963.5. However, SpaceX does not directly address the connections required to trigger those provisions.  Instead, it focuses on the connections required to trigger FEHA's substantive provisions.

SpaceX seems to assume that, if there are insufficient connections to trigger FEHA's substantive provisions, there necessarily are insufficient connections to trigger FEHA's investigatory provisions.  However, these are separate issues requiring separate analyses.  (See *People ex rel. DuFauchard v. U.S. Financial Management, Inc.* (2009) 169 Cal.App.4th 1502, 1519 [noting whether corporations commissioner could investigate violations of California law involving nonresidents is separate from whether California law would apply in an action against a business for the alleged violations].)  By conflating them, SpaceX overlooks the fact that different FEHA provisions have different aims, roles, and potentials to create conflict with other sovereigns.  Indeed, the potential for conflict with other sovereigns is far less when CRD seeks to exercise its investigatory powers than when it seeks to enforce FEHA's substantive provisions by enjoining employment practices. Therefore, it is at least conceivable that fewer connections are required to trigger CRD's investigatory provisions than to trigger FEHA's substantive provisions.  SpaceX does not even

12

acknowledge that possibility.  Its failure to discuss meaningfully FEHA's provisions governing CRD's investigatory authority provides sufficient grounds to reject its arguments on this issue.  (See *Adam, supra*, 211 Cal.App.4th at pp. 286–287.)

### 4.     *SpaceX has not shown CRD lacks jurisdiction under FEHA*

Finally, SpaceX argues the superior court should have denied the petition because CRD failed to establish the basis for its jurisdiction under FEHA.

SpaceX's argument seems to be as follows.  Under FEHA, CRD's investigatory jurisdiction arises only upon receipt of a complaint alleging conduct that, if proven, would be a violation of FEHA.  (See § 12930, subd. (f)(1); Cal. Code Regs., tit. 2, § 10004, subd. (a).)  The allegations in the complaint, if proven, would not be a violation of FEHA because the allegedly unlawful conduct falls outside FEHA's territorial reach.  Therefore, CRD lacked jurisdiction under FEHA to investigate the allegations.[4]

We will assume—without deciding—FEHA does not grant CRD jurisdiction to investigate complaints alleging conduct outside the reach of FEHA's substantive provisions.  Even with that assumption, SpaceX still must show the Employee's allegations fall outside FEHA's territorial reach.  That issue, in turn, depends on how far FEHA's substantive provisions reach.  As we discussed above, this is an issue of statutory construction, which requires an analysis of the relevant provisions' aims, roles

---

[4]     SpaceX specifically argues CRD's lack of jurisdiction caused it to fail to comply with section 12963.5, which states a petition to compel compliance with a subpoena must "describe the inquiry or investigation" before CRD and "the basis for its jurisdiction therein."  (§ 12963.5, subd. (b).)

13

in the statutory scheme, and potential to create conflict with other sovereigns.[5] (See *Ward, supra*, 9 Cal.5th at pp. 752, 755.) SpaceX does not directly conduct that analysis with respect to FEHA's substantive provisions. Instead, it proposes two categorical rules, which it derives from various California Supreme Court cases. We are not persuaded either rule applies.

The first rule—which SpaceX proposes in its briefing— is that FEHA's territorial reach turns on the location of the alleged adverse employment action. SpaceX suggests, if the adverse employment action occurred in California, FEHA applies. Otherwise, FEHA does not apply.

SpaceX derives this rule from *Kearney v. Salomon Smith Barney, Inc.* (2006) 39 Cal.4th 95 (*Kearney*). *Kearney* concerned Penal Code section 632, which generally prohibits the secret recording of confidential conversations. (*Kearney*, at pp. 117– 118.) The California Supreme Court held the statute applied where persons in Georgia secretly recorded phone calls with persons in California. (*Id*. at pp. 99, 120.) The court rejected the argument that this constituted an unauthorized extraterritorial application of the statute. It explained the situation was "more reasonably . . . viewed as an instance of applying the statute to a multistate event in which a crucial element—the confidential communication by the California resident—occurred *in California*." (*Id*. at p. 119.) The court continued, "[b]ecause there can be no question but that the principal purpose of section 632

_____

[5] To the extent SpaceX argues the federal constitution prohibits application of FEHA's substantive provisions to the allegations in the complaint, we think it has forfeited the argument for the same reasons it forfeited its argument that enforcement of the subpoena violates the federal constitution.

14

is to protect the privacy of confidential communications of California residents *while they are in California*, we believe it is clear that section 632 was intended, and reasonably must be interpreted, to apply in this setting." (*Id*. at pp. 119–120.)

Contrary to SpaceX's suggestions, *Kearney* does not stand for the proposition that California law applies *only* if the crucial element of the claim occurred in California. However, even if it did, SpaceX still has not shown the allegations in the Employee's complaint fail that test.

According to SpaceX, the crucial element of a FEHA claim is the " 'adverse employment action.' " SpaceX insists it is undisputed all the alleged adverse employment actions occurred exclusively in Washington, but it does not explain how it came to that conclusion. At oral argument, SpaceX asserted an adverse employment action "necessarily occurs where the employment occurs." SpaceX did not cite authority for that proposition. Nor did it explain how to determine where the "employment occurs" when the employee and employer are potentially in different locations. SpaceX's conclusory assertions are not sufficient to show error.

Nor do we agree with SpaceX's suggestion that the Employee's complaint alleges the adverse employment actions occurred exclusively in Washington. According to SpaceX, the complaint alleges "management in Washington discriminatorily denied [the Employee] equal pay and promotion in Washington and then fired her in Washington for retaliatory reasons." SpaceX's characterization of the complaint is misleading at best, and deceptive at worst. The complaint contains a single explicit allegation referring to Washington. It states SpaceX's Human Resources Director "flew to Redmond, Washington" and met the

15

Employee in person.  The complaint also implies the Employee was in Washington when a Human Resources employee informed her she was being placed on administrative leave.  With the possible exception of the Employee's address—which is redacted—the complaint does not allege any other connections to Washington.  It certainly does not allege the adverse employment actions occurred there.[6]

At oral argument, SpaceX argued a different rule applies to California's labor and employment laws—including FEHA—and is determinative in this case.  According to SpaceX, the key question for such laws is:  "Where did the employee work?"  SpaceX asserted, if the employee did not work in California, the employee is not protected under California's laws.  SpaceX stated this rule is compelled by California Supreme Court jurisprudence on the extraterritorial reach of California's labor laws, specifically *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557 (*Tidewater*); *Sullivan, supra*, 51 Cal.4th 1191; *Ward, supra*, 9 Cal.5th 732; and *Oman v. Delta Air Lines, Inc.* (2020) 9 Cal.5th 762, 772 (*Oman*).

As with *Kearney*, SpaceX reads too much into these cases.  First and foremost, none of the cases involved FEHA, let alone the specific FEHA provisions at issue here.  Instead, they concerned Industrial Welfare Commission (IWC) wage orders (*Tidewater*), the Unfair Competition Law (*Sullivan*), and Labor Code provisions related to overtime, wage statements, and the

---

[6]     It is not clear whether SpaceX argues CRD has jurisdiction only if the complaint explicitly alleges the adverse employment action occurred in California.  If so, SpaceX has forfeited the argument by failing to support it with meaningful analysis and citations to legal authority.  (See *Adam, supra*, 211 Cal.App.4th at pp. 286–287.)

minimum wage (*Sullivan, Ward*, and *Oman*). As the Supreme Court explained in *Ward*, "[t]here is no single, all-purpose answer to the question of when state law will apply to an interstate employment relationship or set of transactions. As is true of statutory interpretation generally, each law must be considered on its own terms." (*Ward, supra*, 9 Cal.5th at p. 752.) Therefore, even if the Supreme Court held the specific provisions at issue in those cases do not apply to individuals working outside California, it would not compel the same conclusion with respect to the specific FEHA provisions at issue here.

Nor do we read *Tidewater*, *Sullivan*, *Ward*, or *Oman* as otherwise compelling a broad rule that California's labor and employment laws categorically do not apply to workers outside California. In *Tidewater*, the California Supreme Court expressly declined to hold IWC wage orders never apply "to employment outside California," noting it was possible the Legislature intended extraterritorial application of such orders in limited circumstances. (*Tidewater, supra*, 14 Cal.4th at pp. 577–578.) The *Sullivan* court expressly left open the possibility that the Unfair Competition Law would apply to overtime work performed in other states by non-California residents if the wages were paid in California. (*Sullivan, supra*, 51 Cal.4th at p. 1208.) The fact the court left open that possibility alone seems to refute SpaceX's suggestion that *Sullivan* compels a conclusion that California's labor protections do not apply to individuals working outside California. Nor do we read *Ward* or *Oman* to support such a broad, categorical rule. To the contrary, those cases caution that each law must be considered on its own terms. (See *Ward, supra*, 9 Cal.5th at p. 752; *Oman, supra*, 9 Cal.5th at p. 772

17

["the application of California wage and hour protections to multistate workers . . . may vary on a statute-by-statute basis"].)

We do not mean to suggest these cases hold California's labor and employment laws necessarily apply to workers outside California, or even that they support application of FEHA in this case. We also recognize that the location of the worker was an important factor in those cases. Nevertheless, we reject SpaceX's suggestion that the cases compel a categorical rule that FEHA does not apply under any circumstances to any employee working outside California.

SpaceX's reliance on *Mahdavi v. Fair Employment Practice Com.* (1977) 67 Cal.App.3d 326, and *Gay Law Students Ass'n v. Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, is misplaced. The plaintiffs in those cases alleged discrimination on grounds the law did not protect at the time. (See *Mahdavi,* at p. 341; *Gay Law Students*, at p. 489.) Therefore, as a matter of law, the alleged conduct did not constitute unlawful practices. Here, there is no dispute the types of conduct alleged in the complaint —discrimination based on sex or gender and retaliation for protected activities—are unlawful under section 12940. The only question is whether there are sufficient connections to California to apply FEHA to them. SpaceX has not shown the allegations in the complaint conclusively resolve that issue. Therefore, unlike in *Mahdavi* and *Gay Law Students*, we cannot say the complaint fails to allege a FEHA violation as a matter of law.

SpaceX's reliance on *Campbell v. Arco Marine, Inc.* (1996) 42 Cal.App.4th 1850 (*Campbell*) is misplaced for similar reasons. In *Campbell*, an employee filed an action against a California-based employer alleging FEHA violations that occurred on a ship while at sea. (*Id.* at pp. 1852–1854.) The court affirmed

18

summary judgment for the employer on the ground that FEHA did not apply to the employee's claims.  (*Id*. at pp. 1854–1855, 1860.)  The court concluded there were insufficient connections to California, noting the employee resided in Washington, applied for the position and was hired in Washington, performed her official duties "on the high seas," and suffered harassment at sea and in Washington.  (*Id*. at p. 1858.)  The court explained the fact the employer was headquartered in California was not a sufficient connection, noting no one working at the headquarters "participated in or ratified the conduct" underlying the claims. (*Ibid*.)  The court also pointed to statements of legislative intent referring to the " 'people of the State of California' " and the " 'California citizenry' " as supporting a conclusion that FEHA "should not be construed to apply to nonresidents employed outside the state when the tortious conduct did not occur in California."  (*Id*. at p. 1860, italics omitted.)

 *Campbell* is distinguishable.  In *Campbell*, the connections to California—or lack thereof—were settled.  Despite SpaceX's insistence otherwise, the same is not true here.  Indeed, one of the primary purposes of SpaceX's subpoena was to determine whether there are sufficient connections to this state.  Moreover, for the reasons we discussed, SpaceX has not shown the connections that are undisputed—mainly, the fact the Employee lived and worked in Washington—compel a conclusion that FEHA does not apply.

## DISPOSITION

We affirm the order.  The California Civil Rights Department shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EGERTON, Acting P. J.

We concur:

ADAMS, J.

KARNOW, J.*

---

\*      Retired Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.